## FREMONT *vs.* STONE.

The defendants made an agreement with the plaintiff by which they stipulated that on the payment by him of $200,000 for a certain number of shares of the capital stock of a railway company, then belonging to them, new directors, to be nominated by the plaintiff and his co-purchaser, H., should be substituted in the place of all the other directors, except the plaintiff and H., who were directors at the time. *Held* that the contract was an attempt improperly to interfere with the rights of others, and was clearly contrary to public policy.

And that if the subject matter of the contract was of that species which would authorize a court of equity to interpose and decree a specific performance, the object and nature of it would forbid any such interposition.

The plaintiff induced H. the trustee who held the package containing the certificates of stock &c. to deposit it in a bank. H. at the same time directed the cashier to deliver the package to the plaintiff on his depositing the balance of the purchase money ($96,616.75) to the credit of H. The plaintiff accordingly paid that sum to the bank, and received the package, without requiring the performance of the stipulation relative to the change in the board of directors, or mentioning the subject. *Held* that even if the contract were such as a court of equity would compel the parties specifically to perform, the circumstances of the case would debar the plaintiff from any right to that relief; and that he could not now prevent H. from receiving the purchase money, and remitting it to the vendors of the stock.

APPEAL from an order made at a special term denying a motion to dissolve the injunction.

*By the Court,* CLERKE, J.    This action is brought to compel the specific performance of an agreement by which some of the defendants stipulated with the plaintiff that on payment by him of $200,000 for a certain number. of shares of the stock of the Union Pacific Railway Company, then belonging to them, new directors, to be nominated by the plaintiff and his co-purchaser Hallett, should be substituted in the place of all the other directors, except Fremont and Hallett, who also were directors at the time. That is, the vendors of this stock undertook to change the board of directors of the company for a consideration, and to substitute others at the dictation of the plaintiff and his co-purchaser; which of course can be done legally and fairly only by the votes of the stockholders; and if done by the management and contrivance of these defendants, would be a fraud on the stockholders at large, subserving the interests of the two paying, and giving to them the entire control of the company.    A contract having this purpose is an attempt improperly to interfere with the rights of others, and is clearly contrary to public policy. Therefore, if the subject matter of this contract was of that species which would authorize a court of equity to interpose in the manner required in this complaint, the object and nature of it would forbid any such interposition.    Besides, I may as well add, here, that if the contract itself was such as a court of equity would compel the parties specifically to perform, the circumstances of this case would debar the plaintiff from any right to this relief.    He induced the defendant Hunt, the trustee, who held the package containing the certificates of stock and other papers, to deposit it in the Metropolitan Bank.    Hunt at the same time directed the bank to deliver the package to the plaintiff on his depositing the balance ($96,616.75) to the credit of Hunt. The plaintiff, accordingly, paid that sum to the bank, and

received the package, without requiring the performance of the stipulation relative to the change in the board of directors, or saying a word about it. He thus became entitled to all the stock which he had purchased, and he cannot now prevent Hunt from receiving the purchase money, and remitting it to the vendors of the stock. Under such circumstances, even if the contract was in its nature and purpose, in all respects, unobjectionable, the court would never give to the plaintiff the aid of its extraordinary jurisdiction.

The order should be reversed, and the injunction dissolved, with $10 costs.

[NEW YORK GENERAL TERM, May 2, 1864. *Leonard, Clerke* and *Welles,* Justices.]