Fred Williams, Appellant, *v.* Thomas J. Montgomery and Others, Respondents.

*Agreement to pool corporate stock — not enforcible by injunction.*

An agreement in writing, executed by persons interested in property which had been transferred to a corporation then recently organized, provided, among other things, for the allotment of certain amounts of the corporate stock to the several parties to the agreement, and that the stock certificates to be issued therefor should be deposited with a certain trust company, "and shall not be withdrawn for the period of six months from this date, without the written consent of each and every party hereto."

One of the parties to this agreement having brought an action against the other parties thereto, to compel a specific performance thereof, applied for an injunction *pendente lite* restraining the defendants from delivering to any person other than the trust company designated in the agreement, any certificates of the stock of the corporation standing in their names, which motion for the injunction was denied.

*Held,* that the injunction was properly refused, on the ground that the agreement was impossible of enforcement, for the reasons :

*First.* That if the agreement was intended to restrain the disposition of the property for a period of six months from the date of the agreement, it was inconsistent with the statutory provisions, and against public policy ; and,

*Second.* That the agreement imposed no restraint upon the disposition of the stock in question ; that all that it would have prevented, if it had been carried out, was the actual handing over of the certificates of stock to the purchasers thereof, and the transfer of the same upon the books of the company ; and that the plaintiff, by the breach of the provisions in reference to the deposit of the certificates under these circumstances, could have sustained no damage, and had no cause of action.

Appeal by the plaintiff, Fred Williams, from an order of the Supreme Court, made at the New York Special Term, held at Chambers, and entered in the office of the clerk of the city and county of New York on the 10th day of February, 1893, denying the plaintiff's motion for an injunction *pendente lite*, and dissolving a preliminary injunction theretofore granted.

*G. M. Pinney, Jr.,* for the appellant.

*W. W. Cook,* for respondent Powell.

*J. H. Miller,* for respondent Montgomery.

*Stern & Rushmore,* for respondent Lande.

Van Brunt, P. J.:

It appeared from the papers that in September, 1892, the Hydraulic Brake Company was organized under the laws of the State of New Jersey, with a total capital stock of $5,000,000, which was to be issued for certain patents covering a railway train brake; and that prior to the month of November, 1892, the plaintiff was jointly interested with the defendants, Montgomery, Powell & Lande, in said patents, which had been theretofore transferred by the patentee, one Guernsey, to said company.

On the 16th of November, 1892, said Powell, Lande, Montgomery and Williams entered into an agreement in respect to the disposition of the stock of the corporation when it should be issued, which agreement bears date the 2d of November, 1892, and is as follows:

"This agreement, made this second day of November, 1892, by and between John B. Powell, Bernard Lande and Thos. J. Montgomery, all of the city of New York, and Fred Williams, of London, England, witnesseth:

"For and in consideration of one dollar paid by each of the parties hereto to each other, the receipt whereof is hereby respectively acknowledged, it is agreed as follows:

"That of the capital stock of the Hydraulic Brake Company, one million ($1,000,000) dollars shall be put into the treasury of the company for working capital;

"Four hundred and fifty thousand ($450,000) dollars shall be issued to Messrs. Montgomery and Powell, as trustees;

"Four hundred thousand ($400,000) dollars to Messrs. Montgomery and Powell, as trustees;

"One million and six thousand two hundred and fifty ($1,006,250) dollars to Thos. Montgomery;

"Seven hundred and seventy-five thousand ($775,000) dollars to John B. Powell;

"Seven hundred and seventy-five thousand ($775,000) dollars to Bernard Lande; and

"Five hundred and forty-three thousand seven hundred and fifty ($543,750) dollars to Fred Williams.

"We also agree that the above certificates to Montgomery, Powell, Lande and Williams, shall be deposited in the Central Trust Company,

with a copy of this agreement, and shall not be withdrawn for the period of six months from this date, without the written consent of each and every party hereto; but with this proviso: That if sufficient treasury stock shall be sold to realize the sum of thirty thousand ($30,000) dollars in cash, then and in that event the stock which has been deposited in the Central Trust Company may be withdrawn by either of the parties, provided said party shall first notify the other parties hereto in writing, at least five days before said withdrawal."

Attached to said instrument was this agreement:

"Regarding the notification clause of 5 days in the within agreement, I hereby agree that any notice served upon my attorney, George M. Pinney, Jr., No. 96 Broadway, is binding upon me the same as if served upon myself.

"FRED WILLIAMS."

Subsequent to the execution of said agreement there was issued to the said defendants, Montgomery, Powell & Lande, the stock of said company which they were respectively entitled to receive in accordance with said agreement; and the plaintiff, in his complaint, alleges that he has no knowledge or information sufficient to form a belief as to whether any certificate representing the plaintiff's interest in said stock had been issued or delivered to any person whatsoever, and that no notice of such issue of stock had been given to the plaintiff, and that the fact that any part of said stock had actually been issued was concealed and withheld from the plaintiff by the defendants for the purpose of fraudulently carrying out a scheme to render that part of said agreement of November 2, 1892, providing for the deposit of certificates in the Central Trust Company, wholly inoperative, and for the further purpose of wrongfully and illegally securing to the defendant Montgomery a controlling interest in the stock of said brake company.

The complaint further alleged that after the stock of said brake company to which Powell and Lande were respectively entitled had been issued to them, the defendant Montgomery purchased, or "agreed to purchase from said Lande and Powell, enough of their stock to give him, with his own stock, control of the capital stock of said brake company, and that pursuant to such agreement, the

certificates representing the respective interests of said Lande and Powell in said stock were deposited with the defendant, the State Trust Company, together with the agreement or agreements, under and pursuant to which the said Montgomery had purchased, or agreed to purchase, the stock of the said Lande and Powell." The complaint further alleges that none of the certificates of stock of said brake company issued to the defendants, Montgomery, Powell & Lande, or either of them, have been deposited in the Central Trust Company as provided in said agreement, and that no certificate representing the interest of this plaintiff in the stock of said company had ever been deposited in the Central Trust Company, as provided in said agreement.

The complaint further alleges : " That this plaintiff did not until January 24th, 1893, or thereabouts, ascertain that said agreement of November 2d, 1892, had been broken by the defendants, Montgomery, Powell and Lande, and an attempt made to render the same wholly inoperative, and that immediately upon making such discovery, the plaintiff demanded of the defendants, Montgomery, Powell and Lande, that the certificates of the stock of said brake company, issued to the said defendants, and the certificates issued, or to be issued to this plaintiff, as provided in said agreement, be at once deposited in the Central Trust Company, together with a copy of said agreement, but that the said defendants, Montgomery, Powell and Lande, having wholly refused, and still refuse to comply with said demand."

The complaint further states that unless the defendants and each of them be enjoined and restrained from making any other disposition of the certificates of said stock now in possession of the defendant, the State Trust Company, standing in the names of Montgomery, Powell & Lande, than to deliver same to the Central Trust Company, as provided in said agreement, the plaintiff will suffer irreparable and incalculable loss and damage, and the control of said brake company will become vested in Montgomery contrary to and in defiance of the spirit and intention of said agreement; and that the whole object and purpose of the plaintiff and of the defendants, Montgomery, Powell & Lande, in executing said agreement, as was fully understood by each of them, was to place defendants and plaintiff on an equal footing as regarded the control of said com-

pany for a period of six months after the stock had been issued, and also to prevent for the same period any sales by said defendants or by plaintiff of their respective individual holdings of said stock, unless in the meantime a sufficient part of the treasury stock of said company should be sold to realize $30,000 in cash for the use of the company, and " that if the scheme of said Montgomery to obtain a controlling interest in the stock of said brake company by violating said agreement of November 2d, 1892, is carried out, it will, as the plaintiff is advised and believes, be impossible to sell any part of the treasury stock of said company for the purpose of meeting the obligations of the company and of paying its necessary current expenses ; that said Montgomery already has or pretends to have a first claim against said company to the extent of five thousand dollars ($5,000) for moneys advanced to said company to pay two certain notes made by it to one Guernsey, and that a part of the scheme of said Montgomery in acquiring a controlling interest in the company is to have the company and this plaintiff as a minority stockholder, absolutely at his, the said Montgomery's, mercy, as a creditor of said company and in defiance of said agreement of November 2d, 1892."

Wherefore the plaintiff demanded judgment, among other things, for an injunction restraining defendants from delivering to any person other than the Central Trust Company any certificates of the stock of the Hydraulic Brake Company standing in the names of or issued to the defendants, Montgomery, Powell & Lande, and the plaintiff, or either of them, as trustees or otherwise.

The defendants admit the making of the agreement in question and some of the alleged objects of the agreement, and allege that despite the efforts of all persons interested in said company no sale could be made of any of said treasury stock, and that in December, 1892, the difficulties of the company and its financial embarrassments became pressing and were discussed by the defendants, Montgomery, Powell & Lande, and the defendant Montgomery informed them that he was unable to obtain assistance from his friends unless he might own and control a majority of the stock, and that if an agreement could be made whereby said Powell and Lande would sell to him out of their interests, whereby he might obtain a majority of the stock, he thought he could obtain the necessary assistance to pay

the debts of the company, and that an agreement was reached whereby Powell and Lande agreed to sell sufficient of their stock to give him control of the company, and the amount of shares belonging to Powell and Lande, together with the agreement of Montgomery to purchase, were deposited with the State Trust Company, and that after this arrangement had been made Montgomery obtained from his friends the assistance desired to relieve the company temporarily from its financial embarrassments.

The defendants deny the concealment of the issue of stock, or that such issue of stock had anything to do with any fraudulent scheme, or otherwise to render the agreement inoperative or void. And defendants deny that the object and purpose of said agreement was to place defendants and the plaintiff upon an equal footing as regards the control of said company, or that said agreement prohibited sales by any of the parties of their respective holdings unless sufficient treasury stock was sold to realize $30,000 for the use of the company  And defendants allege that the intention of the parties was that they should be prohibited from offering to the public, or on the market generally, their respective shares at such a price or under conditions that would interfere with the value of the stock, or the possibility of realizing an amount of money to the extent of at least $30,000 by the sale of the whole or any portion of the treasury stock.  And the defendants deny that the fact that Montgomery has obtained control will render it impossible to sell any of the treasury stock.

Upon this state of facts the court dissolved the preliminary injunction which had been procured upon the application of the plaintiff at the commencement of the action, and from the order thereupon entered this appeal is taken.

The case of the plaintiff, as alleged in his complaint, seems to be based upon assumptions as to the object and purpose of the agreement of November, 1892, which are not contained therein, and which form no part thereof.

If it was the intention of these parties by the deposit of these certificates in the Central Trust Company, to prevent any disposition of this stock by the parties owning the same for the period of six months, such an arrangement, if not void as being contrary to the statute, is certainly unenforcible as against public policy.

Persons cannot agree to surrender the control and ownership of property belonging to them for a definite period, and enforce such an agreement in any court of justice.

And furthermore, it is urged that the object and purpose of the deposit of this stock was to prevent the defendant Montgomery from obtaining control of this corporation. It is not alleged that any such agreeeement was entered into between these parties, and it is not contained in the written instrument under consideration. And that such was not the understanding of the parties seems to be evident from the fact that the ownership of any number of shares of stock of this corporation for this period of six months within the first year of its organization, would give the defendant no greater control of the corporation than he had at the time of the execution of this agreement. There was no allegation that there was to be any election of trustees or directors, or that the ownership of this stock could be used for any purpose in reference to the conduct of the business of the corporation.

The claim that it was the understanding of the parties that this deposit was to be made in order that these parties should be upon an equality in reference to this corporation, seems upon its face to be absolutely incredible, in that no reason whatever is assigned why the parties owning the greater number of shares in this stock should surrender any advantage which such ownership could possibly give.

It is admitted that the object of these parties was to prevent this stock from getting upon the market until some of the treasury stock might be sold to provide funds for carrying on the business of the company. But there is nothing in this agreement which prevented the defendant Montgomery either from purchasing the stock of Powell and Lande, or from purchasing the debts due from the corporation, and thus obtaining any advantage which might accrue from such purchase and ownership.

Indeed, the learned counsel for the plaintiff, in one portion of his brief, urges that Montgomery's purchase of Powell and Lande's shares was plainly contrary to the agreement of November, 1892; and in another part claims that the legal objection urged by the counsel for the defendant, that the agreement is void and against public policy and in restraint of trade, is untenable because there is nothing in the agreement which restrains the defendants from agree-

ing to transfer their shares for the period of six months, but that they are simply prohibited from making title by the transfer and delivery of the certificates, which, in the present case, they attempted to do, as the certificates are to be delivered to Montgomery upon the payment of his notes, the last of which matures on the sixteenth of March.

Now, it is idle to say that the mere want of possession of these certificates of stock prevented the transfer of the title thereto. It may be true that, without the surrender of the certificates, Montgomery could not become the holder of the stock upon the books of the company. But there is no intimation that there was any advantage to be gained by having the stock transferred to Montgomery's name upon the books of the company. Therefore, it is conceded, as well as denied, by the plaintiff's counsel, that Montgomery had a right to purchase this stock and become the owner thereof, and the only thing that he was prohibited from doing was to have the manual possession of the certificates and to have them transferred to his own name. What possible advantage the mere prohibition of the manual possession of these certificates could be to the plaintiff, it is difficult to imagine. As already seen, the title to the stock could be transferred, perhaps not with equal facility, but with equal security, the certificates being in the hands of a responsible depositary.

Some point seems to have been made upon the part of the plaintiff that no notice of the issue of this stock had been given to him, and that his stock had not been deposited with the Central Trust Company. There is no obligation contained in the agreement to notify the plaintiff of the issue of the stock to him. Nor is there any undertaking upon the part of the defendants to deposit his stock with the trust company. And the point that these various notices might have been given to the plaintiff through his attorney because of the addendum to the agreement of November, 1892, is certainly not well taken, because if it had been necessary to give the plaintiff notice of any of these facts in order to have protected the defendants, and a notice had been given to his attorney and the plaintiff had desired to repudiate that notice, he would have said at once, " I did not agree to accept the notice that way," and he would have referred to the only agreement which he executed authorizing notice to be given to his attorney, and that is expressly limited to the

notification clause of five days, which related to the authority of any of the parties to withdraw the stock if · $30,000 in cash of treasury stock had been sold, upon giving five days' notice to the other parties in writing.

It seems to us upon the whole case, entirely independent of the question as to whether it was necessary for Montgomery to acquire the title to this stock in order that he might procure money to relieve the company from embarrassment, and as to what his purpose was, that the agreement under consideration was impossible to be enforced :

*First.* Because if it was intended to restrain the disposition of this property for a period of six months from the date of the agreement, it was against the statute and public policy ; and,

*Secondly.* Because the agreement imposed no restraint upon the disposition of the stock in question. All that it prevented, if it had been carried out, was the actual handing over of the certificates of stock to the purchasers thereof, and the transfer of the same upon the books of the company, and it is evident that the plaintiff, by the breach of the provisions in reference to the deposit of these certificates under these circumstances, could have sustained no damage, and has no cause of action.

The order should be affirmed, with costs.

O'Brien and Follett, JJ., concurred.

Order affirmed, with costs.