W. S. HARVEY, Trustee   v. THE LINVILLE   IMPROVE-
MENT COMPANY, et al.

*Corporations—Stockholders—" Pooling " Stock, Illegality
of—Public Policy.*

1. Every stockholder of a corporation, in person or by proxy,
   must be free to vote as he deems best for the interests of the
   corporation, and any combination or device by which any
   number of stockholders attempt to place the voting of their
   shares in the irrevocable power of another is against public
   policy.   Hence,

2. An agreement between stockholders holding a majority of the
   shares of a corporation to " pool " their stock by transferring
   it to trustees to be voted at corporate meetings, and to
   pledge it as collateral for loans, is illegal and voidable as
   against public policy.

ACTION FOR AN INJUNCTION and other relief, by W. S.
Harvey, Trustee, against the Linville Improvement Com-
pany, Hugh MacRae and others, pending in CALDWELL
County, and heard, on motion, before *Timberlake, J.*, at
Burnsville, on May 22, 1895, upon complaint, used as an
affidavit, and upon other affidavits and documents adduced
in behalf of plaintiff and defendants. His Honor refused
the injunction and rendered the following judgment, in
which the facts are succinctly stated :

" This cause coming on to be heard before me, *in Cham-
bers*, at Burnsville, N. C., on Wednesday, the 22d day of
May, 1895, that day having been set by consent of all par-
ties for the hearing, in lieu of the 20th of May, upon the
order heretofore made by me requiring the defendants,
Hugh MacRae, John F. Divine and T. B. Lenoir to show
cause why an injunction should not issue enjoining them
from voting certain shares of the stock of said Linville

Improvement Company, alleged in the complaint to have been purchased by the plaintiff from Wallace Hahn, D. G. Worth and S. T. Kelsey, and requiring the defendant, the said Linville Improvement Company, to show cause why an injunction should not issue enjoining it and its officers from signing, issuing, selling, or otherwise disposing of any of the bonds of the Company mentioned in the complaint, and from selling, conveying or encumbering in any way any real or personal property of the said Company; and having been heard upon the complaint, used by the plaintiff as an affidavit, and upon the other affidavits produced in writing before me, and upon argument of counsel for the plaintiff and for the defendants, except the defendant T. F. Parker, who was represented by the counsel for the plaintiff: It is now found and declared by the court, that the defendant, T. B. Lenoir, instituted the action now pending in the superior court of Mitchell county against the defendant corporation, in which the receiver was appointed, in good faith and upon the advice of his counsel, for the purpose of recovering a debt due him as executor of Walter W. Lenoir and without any combination or confederation with any of the other defendants; that it is not true that he and the said Hugh MacRae and Donald MacRae, or either of them, circulated among the other stockholders unfounded statements affecting the integrity of the officers of the Company or its condition, to create any feeling of distrust or alarm among them for their investments; that it is true the majority of the stockholders in the defendant corporation, including the said Wallace Hahn, David G. Worth and S. T. Kelsey, executed an agreement—a copy of which is attached to the complaint and called the 'pool agreement'—for the purposes of borrowing money to pay off the debts of the Company, and that the defendants, Hugh MacRae, T. B. Lenoir and John F. Divine, trustees

named in said ' pool agreement,' have actually borrowed the sum of nine thousand dollars, upon the pledge of all of the stock conveyed to them by said ' pool agreement,' including the stock which was owned by the said Hahn, Worth and Kelsey, which the plaintiff claims to have purchased from the said parties, for the purpose of paying the debts of the said Company, and upon the pledge 'of all of the said stock included in the said agreement, and that this was done before the said Harvey purchased the said stock, and that the said money is now owing and unpaid.

" That, at an adjourned meeting of the stockholders of the said Company, held at Hickory, N. C., on the 26th of September, 1894, at which were present, either in person or by proxy, over fourteen hundred shares of the capital stock of the said Company, out of a total issue of fifteen hundred shares, a resolution was adopted, by a majority vote of all of the stock present, to issue first-mortgage bonds to the amount of sixty thousand dollars, secured by a mortgage upon a part of the property of said Company, for the purpose of paying off the debts of the Company, and getting it and its property released out of the hands of the receiver; that at this meeting the said stock was voted by the stockholders themselves, or by their proxies, and was not voted or controlled in any way under the ' pool agreement,' or by the trustees therein.

" It was admitted on the part of the plaintiff that he had an option for the purchase of a sufficient number of shares of the capital stock of the Company to gave him a majority thereof, and intended to purchase the same, provided he could get control of the Company.

" That this action has been brought by the plaintiff to have the said ' pool agreement ' and the said issue of bonds declared invalid, in order that he may purchase said

majority of the capital stock of the said Company and obtain the control thereof.

"It is thereupon ordered and adjudged by the court, that the plaintiff's motion for an injunction be and the same is hereby, in all respects, denied."

The "pooling" agreement referred to in the judgment was as follows:

"Whereas, the Linville Improvement Company is indebted to various persons in large sums of money, and is now in the hands of a receiver, appointed by a decree of the superior court of the County of Mitchell in the State of North Carolina; and whereas the undersigned, who are stockholders, and some of whom are also creditors of the said Company, are desirous to extricate the Company from its present financial embarrassment, pay off its debts, and enable it to resume its operations, now therefore we, the undersigned, stockholders of the Linville Improvement Company, have agreed, and do hereby agree with each other as follows:

"That, for the purpose herein set forth, we will pool of the stock of the said Company owned by us respectively, and will transfer the same to John S. Divine, T. B. Lenoir and Hugh MacRae, to be held by them and their successors upon the trusts and for the purposes herein declared. The said trustees shall give proper receipts for the stock so transferred to them. The said trustees shall have power to vote the said stock so transferred to them in all meetings of the stockholders of said Company, to borrow money to pay off and discharge the present indebtedness of the Company and to pledge the stock so held by them, or any part of it, as collateral security for the money so borrowed.

"If any vacancy among the said trustees shall occur at any time, the same shall be filled by the votes of the hold_ers of the majority of the stock represented in the agree

ment. And the holders of the majority of such stock shall have the right, whenever they see proper to do so, to instruct the said trustees how to vote upon matters arising, or to arise, in any meeting of the stockholders of said Company. Any one or two of the said trustees may vote the entire stock so transferred to them in any meeting of the stockholders of said Company, being so duly authorized in writing by the other or others.

"Any one or more of the said trustees, or of their successors herein, may at any time be removed, and their places filled by a vote of the majority of the stock herein represented. All stockholders shall at once pay up all unpaid subscriptions owing to the Company on the stock held by them. A meeting of the stockholders executing this agreement may be called by the trustees at any time upon ........ days' notice, and shall be called by them upon like notice at any time, upon request of any three or more of the stockholders executing this agreement; and in all such meetings, a majority of the said stock being present in person or by proxy, shall be a quorum; and any action taken by them shall be binding on all.

" This agreement shall be void if not executed by holders of the majority of all the stock of said Company, but when so executed it shall be enforced and binding upon all who sign it for the period of five years from the date hereof, unless it be sooner determined and put an end to by a vote of the holders of two-thirds of the stock represented herein. Upon the determination of this agreement the trustees shall transfer to each of us the stock owned by us respectively. Dated the 23d day of April, 1894."

The plaintiff appealed from the judgment of his Honor refusing injunction, &c.

*Messrs. Davidson & Jones*, for plaintiff (appellant).
*Mr. Junius Davis*, for defendant (appellee).

CLARK, J.: At common law stockholders could not vote by proxy. *Taylor* v. *Griswold*, 14 N. J. Law, 222, and other cases cited in Cook on Stocks, Sec. 610. This is now otherwise, but it is still held that each stockholder, whether by himself or by proxy, must be free to cast his vote for what he deems for the best interest of the corporation, the other stockholders being entitled to the benefit of such free exercise of his judgment by each; and hence any combination or device by which any number of stockholders shall combine to place the voting of their shares in the irrevocable power of another is held contrary to public policy. *Cone* v. *Russell*, 48 N. J. Eq., 209. Various devices have been resorted to for the purpose of so tying up the stock that no one of the parties to the " pool " or combination can break the agreement. " Irrevocable " proxies to vote the stock have been given to a designated party who acted as trustee or agent, but the courts held such proxies not irrevocable and that they might be revoked at any time. Cook, *supra*, Secs. 610, 622; *Woodruff* v. *Dubuque*, 30 Fed. Rep., 91; *Vanderbilt* v. *Bennett*, 2 Railway & Corp. L. J., 409. Another plan was to place the stock of the various parties in the hands of trustees, with power to transfer the stock to themselves and to hold and vote the same, trustees' certificates being is. ed to the various parties, specifying the amount of stock so deposited by them and their interest in the pool, but the courts held that any holder of a trustee's certificate might at any time demand back his part of the stock. *Woodruff* v. *Dubuque*, *supra*, and other cases cited in Cook, *supra*, Sec. 622. Another device was that the parties contracted together not to sell their stock for a specified time or only to a

purchaser acceptable to them all. It was held that notwithstanding such contract any one of the parties might sell his stock to any one he pleased and at any time. *Fisher* v. *Bush*, 35 Hun., 642; *Williams* v. *Montgomery*, 68 Hun., 416. Another plan was to restrict by a by-law the right to transfer stock, but this was held illegal. *Morgan* v. *Struthers*, 131· U. S., 246, and other cases cited in Cook, *supra*, Sec. 332. A provision that a purchaser of a certificate of stock who sold in violation of the agreement should be entitled to the dividends, but should receive no right to vote, was likewise held invalid. *Harper* v. *Raymond*, 3 Bosw., (N. Y.,) 29. Numerous decisions affirm the correctness of the above rulings, which are based upon the illegality, because against public policy, of permitting large blocks of stock to be irrevocably tied up for the purpose of being voted *in solido* for the interest of a clique or section of the stockholders, and not according to the judgment of each individual stockholder for the benefit of the entire corporation. There are some few decisions trenching more or less upon the principles above stated, but we deem them contrary to sound principle of public policy, and hence not authority. In short, all agreements and devices by which stockholders surrender their voting powers are invalid. 5 Thompson Corporations, Sec. 6604. The power to vote is inherently annexed to and inseparable from the real ownership of each share, and can only be delegated by proxy with power of revocation. The "pooling" arrangement, admitted to have been entered into by the majority of stockholders in the present case is contrary to public policy and voidable ( *Woodruff* v. *Dubuque, supra*) and the plaintiff assignee of certain of the trustees' certificates is entitled to have his name entered as the owner and holder of the shares of stock represented by said trustees' certificates, and to have

said shares issued to him, should the facts be found in accordance with his allegation, and to have the defendant restrained, till the hearing from voting or controlling in any way the stock purchased by the plaintiff or in any wise interfering with the plaintiff's right to vote, control or dispose of said stock.

                                                          Error.

AVERY, J., did not sit on the hearing of this case.