R. M. SHEPPARD v. ROCKINGHAM POWER COMPANY.

(Filed 25 May, 1909.)

1. Corporations — Shares of Stock — Voting Trust or Pool — Public Policy—Rights of Individual Owner.

A stock agreement which takes away from the stockholders all right to vote for a period of three years after a certain future time, and provides for a voting committee to decide upon facts or conditions to conclude and bind all parties in interest, is contrary to public policy and void, as each stockholder must be free to cast his vote for what he deems for the best interest of the corporation.

2. Corporations—Shares of Stock—Voting—Legal Title—Beneficial Ownership—Illegal Trust—Public Policy.

An agreement which separates the beneficial ownership of stock in a corporation from the legal title is contrary to public policy and void.

3. Corporations—Shares of Stock—Voting Trust—Proxy—Period of Duration.

An agreement pooling stock in a corporation which creates a voting trust, with absolute powers to decide upon matters arising for a period exceeding three years, cannot be considered as a proxy authorized by the Revisal, sec. 1184. A proxy is only good for the period of three years.

4. Corporations—Shares of Stock—Voting Trust—Proxy—Powers Revocable.

An agreement to pool shares of stock in a corporation for voting purposes, if considered as a proxy (Revisal, sec. 1184), cannot be made irrevocable.

5. Corporations—Shares of Stock—Demand—Voting Trust—Lawful Intent—Answer Insufficient.

An answer of an illegal pool for the voting of corporation stock to a demand for possession of his stock by a purchaser of the stock so held, that it would not vote such stock illegally, etc., is insufficient.

6. Corporations — Voting Trust — Shares of Stock — Rights of Purchaser—Injunction.

A purchaser of shares of corporation stock held by an illegal voting trust may enjoin the voting thereof by the trust or its carrying out a contemplated plan of reorganization, and may vote the same in all stockholders' meetings.

ACTION from NEW HANOVER, heard upon injunction by *Lyon, J.,* at chambers, 5 December, 1908.

Defendant appealed.

*Davis & Davis* for plaintiff.
*Shepherd & Shepherd* for defendant.

CLARK, C. J. This is a suit to declare illegal and void a stock deposit or voting trust agreement, and restrain the voting trustees from using or exercising any power or control over the common stock of the defendant, Rockingham Power Company, and from voting the same in any meeting, and to declare the holders of the stock-deposit certificates issued by the trustees to

be the *bona fide* owners of the common stock of the Rockingham Power Company, and for the election of officers and for the transfer and assignment of ten shares of common stock to the plaintiff in lieu of a stock-deposit receipt, issued by the voting trustees, calling for ten shares of stock.

The stock agreement takes away from the stockholders all right to vote for a period of three years after the first installation of the power plant of the Rockingham Power Company, and provides that the decision of the voting committee as to any of the facts or conditions of the said stock-deposit agreement shall be conclusive and bind all the parties in interest. The agreement is not made for the protection of bondholders, but to enable the stockholders to pool the stock and to control the corporation by a voting trust. The plaintiff was not a party to said agreement, but is a purchaser of ten shares of the stock thus pooled.

The agreement deprives the stockholders of the right to vote, and is therefore contrary to public policy and void. *Harvey v. Improvement Co.,* 118 N. C., 693; *Cone v. Russell,* 48 N. J. Eq., 209; *Shepaug Voting Trust Cases,* 60 Conn., 579; *Clark v. Railroad,* 50 Fed., 338; Cook Stockholders (4th Ed.), sec. 622.

*Harvey v. Improvement Co., supra,* is "on all fours," except that the agreement here is, if anything, more objectionable. In *Harvey's case* we said: "Every stockholder must be free to cast his vote for what he deems for the best interest of the corporation, the other stockholders being entitled to the benefit of such free exercise of his judgment by each; and hence any combination or device by which any number of stockholders shall combine to place the voting of their shares in the irrevocable power of another is held contrary to public policy."

In that case, as in this, the action was brought by the holders of a certificate issued by the voting committee. The voting-trust agreement in *Harvey's case* provided that if a vacancy occurred among the trustees it should be filled by the votes of the holders of the majority of the stock represented in the agreement, and that the holders of a majority of such stock should have the right, whenever they saw proper to do so, to instruct the trustees how to vote upon matters arising in the meeting, and also to remove the trustees and fill their places at any time.

No such agreements or stipulations appear in this case. The power is absolute in the trustees to do as they see fit, and any instructions from the majority of the stockholders would be useless.

*Chief Justice Baldwin,* of Connecticut, in a recent article (Yale Law Journal, 1891), says: "It is obvious that a trust of this character virtually severs the ownership of the stock from the power to vote on it. The legal owner casts the vote, but at the dictation of a third party who is not the equitable owner. And not only is the third party not the equitable owner, but he may, in the progress of time, be directly opposed to his interests. He represents the interests of the original constituents of the trust as they existed years before. Their interest in the stock meantime may have been sold to others, of different views, but these can take no share in the management of the corporation during the life of the trust. The legal theory of the relation between the State and those who receive from it a corporate franchise is that it is one resting on a personal confidence. The State issues, so to speak, its commission to the corporators, as its trusted and well-beloved servants, fit to do this special work which it commits to them. They can, therefore, no more alienate the right to vote on their stock at corporate meetings than the citizen can alienate his right to vote at public elections. Delegation is a temporary alienation, and therefore proxy voting is not recognized at common law at meetings of corporations. As was said in *Taylor v. Griswold,* 14 N. J. L., 222, 'The obligation and duty of corporators to attend in person and execute the trust or franchise reposed in or granted to them is implied in and forms a part of the fundamental constitution of every charter in which the contrary is not expressed.' "

Any agreement which separates the beneficial ownership of the stock from the legal title is contrary to public policy and void. *Harvey v. Improvement Co.,* 118 N. C., 693; *White v. Fire Co.,* 52 N. J. Eq., 178; *Shepaug Voting Cases,* 60 Conn., 576; *Cone v. Russell,* 48 N. J. Eq., 208; Beach on Corporations, sec. 306; *Clark v. Railroad,* 50 Fed., 338; *Kriessel v. Distilling Co.,* 61 N. J. Eq., 5.

"A sale by a stockholder of the power to vote upon his shares is illegal for very much the same reason that a sale of his vote by a citizen at the polls, or by a director of a corporation at a meeting of the board, is illegal. Each is a violation of duty; in effect, if not in purpose, a betrayal of the trust." *Guernsey v. Cook,* 120 Mass., 501; *Woodruff v. Wentworth,* 133 Mass., 309; *Fremont v. Stone,* 42 Barb., 169; *Noel v. Drake,* 28 Kan., 265. This agreement cannot be justified as a proxy, for a proxy is good only for three years. Revisal, 1184. A proxy is always revocable, and even when by its terms it is made irrevocable, the law allows the stockholder to revoke it. Frequently an attempt is made to permanently unite the voting power of several stockholders and thus control the corporation by giving irrevocable proxies to specified persons, but the law allows the stockholder to revoke this proxy at any time. Cook on Corporations (4th Ed.), sec. 611; *Woodruff v. Railroad,* 30 Fed., 91; *Cone v. Russell,* 48 N. J. Eq., 208; *Bridgers v. Staton, ante,* 216.

It is true that the voting trustees deny that they have any intention of voting the said stock, or causing the same to be voted, to bring about a reorganization of the company, and are advised by counsel and believe that they have absolutely no power whatever to vote said stock or cause said stock to be voted to bring about a reorganization of the company without the assent of all the holders of all said deposit receipts. This is not a sufficient answer for their refusal to transfer and assign the stock and deliver it to the plaintiff upon his demand. Plaintiff demanded the stock of the voting trustees prior to the institution of this action. In *Griffith v. Jewett,* 15 Weekly Law Bulletin, 419, the Court said: "We are dealing with the rights of property, and it is no answer, to one's demand for the possession and control of his own property, to say that he who withholds it does not intend to use it for an illegal purpose. The law gives to every one not under disability the control of his own property, and imposes upon him the duty of making lawful use of it."

Restrictions on the right to vote stock, like restrictions on the right to sell stock, are not favored by the courts, and the courts have held that any holder of trustee's certificates issued under

similar contracts and agreements as this one might at any time demand back his part of the stock. 2 Cook Corporations (4th Ed.), sec. 622; *Fisher v. Bush,* 35 Hun., 641; *Guernsey v. Cook,* 120 Mass., 501.

A *mandamus* or mandatory injunction lies to compel a corporation to transfer stock and to compel election of officers. Cook on Corporations, sec. 309; *Trust Co. v. Moran,* 29 L. R. A., 212; *Railroad v. Pennsylvania Co.,* 54 Fed., 741, 745, 750-752; High Inj., sec. 2; *Railroad v. Felton,* 69 Fed., 273.

The illegality of voting trusts having been held by this Court, in *Harvey v. Improvement Co.,* 118 N. C., 695, and *Bridgers v. Staton, ante,* 216, his Honor properly enjoined the voting trust in this case from using or exercising any control over the common stock of the Rockingham Power Company and from voting the same in any meeting whatsoever, and in adjudging that all *bona fide* owners of such stock and holders of receipts issued therefor by said voting committee shall be entitled to vote the number of shares to which they are entitled in all meetings of the stockholders of said company, and enjoined the voting trust from carrying out any plan of reorganization.

Affirmed.