IN RE RECEIVERSHIP OF SELWAY STEEL POST & FENCE COMPANY.

MARK L. JOHNSON, Receiver, Appellant, v. JOHN H. JOHNSON et al., Appellees.

**EXECUTION:** Levy—Equitable Interest—Absence of Legal Holder—Effect. An execution levy on the equitable interest of a party in corporate stock which is held in trust, is properly released on motion when it is made to appear that the trustees of the stock are not parties to the proceedings or in any manner before the court.

*Appeal from Polk District Court.*—LESTER L. THOMPSON, Judge.

NOVEMBER 11, 1924.

INTERVENER, John A. Thompson, filed a motion in the receivership case to release the levy of an execution on certain corporate stock, on a judgment against defendant John H. Johnson, rendered in May, 1922. The motion was sustained, and the receiver appeals.—*Affirmed.*

*Howard L. Bump* and *James C. Hume,* for appellant.

*Casper Schenk* and *Burnstedt & Hemingway,* for appellees.

PRESTON, J.—The main controversy is between the receiver and John A. Thompson. The receiver has a judgment against Johnson for something over $10,000. The worth of the stock is not sufficient to satisfy the judgment. The receiver filed a resistance to intervener's motion, to which intervener filed a reply. The facts are not complicated, nor is there any serious dispute therein.

Thompson, intervener, is a stock broker, and, under the trade name of Thompson & Company, conducted a general brokerage business in the purchase and sale of corporate stocks, in Des Moines. September 24, 1920, defendant Johnson owned 50 shares, of the par value of $100 each, of the stock of the Great Republic *Re-*Insurance *Fire* Company, an insurance company, of the city of Des Moines. Two stock certificates, Nos. 99 and 190, of 25 shares each, were issued to him. In January, 1921, the company's name was changed to Great Republic Insurance Company. The company's home office remained at the same location and in the same building, and the current telephone directory, issued in December, 1922, continued to list it under the old name. We do not regard the last named two circumstances as of controlling importance.

On March 16, 1921, Johnson and five other officers and directors of said new insurance company, in their individual capacities, entered into a written agreement by which Johnson agreed to transfer his shares of stock in the company to them as trustees, they to hold and vote the same and to pay him profits and dividends accruing thereon, for a period ending January 1, 1931. On April 26, 1921, Johnson assigned his stock to the five trustees,

and his certificates Nos. 99 and 190 were assigned and delivered by Johnson to the trustees, and by them in turn surrendered to the company. The trust agreement recites that it was entered into because the stockholders are widely scattered, and are unacquainted with the insurance business, and that it is the desire of the stockholders subscribing to the agreement that the present management of the company be uninterrupted, and continuity in its business policy secured, etc. The agreement also contains the following provisions:

"(3) The trustees shall receive and collect all profits and dividends accruing to the said stock and shall pay over the same with all convenient speed after the receipt of the same to the respective equitable owners thereof. And the trustees shall issue to each stockholder becoming a party hereto one or more transferable trustees' certificates covering the number of shares of stock assigned by each stockholder to the trustees, who shall recognize the validity of the sale and transfer of the trustees' certificates to other parties as the lawful assigns and successors of the original owners thereof and entitled to all their rights in the premises. * * *

"(6) This agreement shall be and continue in force and binding on all parties hereto, their heirs, administrators, executors, successors and assigns until January 1st, 1931. However, the same may be terminated before said date by a three-fourths vote of all the trustees or by a three-fourths vote of all trustees' certificates issued to the stockholders under this agreement, at the discretion of the owners of said trust certificates. On the question of dissolution of this agreement each voting trust certificate shall have one vote for each share of stock represented by it. * * *

"(8) At the termination of the trusteeship, the trustees shall cause 'the company' to issue to the lawful holders of the trust certificates their respective proper number of shares of stock in 'the company.' "

Other stockholders made similar assignments to the five, and the new stock certificate, No. 502, for 829 shares, was issued by the company to the said trustees on May 13, 1921. Johnson's stock was included in the 829 shares. On April 26, 1921, the

trustees issued to Johnson a trustees' certificate in the new company, as follows:

"This certifies that, J. H. Johnson of Stratford, Iowa, is entitled to 50 shares of the par value of $100.00 each, of the beneficial interest in the capital stock of the Great Republic Insurance Company, certificates for which have been issued to us, the undersigned, as trustees, pursuant to and by virtue of a certain agreement made by and between certain stockholders of 'the company' and by and between the said certain stockholders and the undersigned as trustees, and dated the 16th day of March, A. D. 1921. The holder of this certificate is entitled to the beneficial interest provided in and by said agreement, including his proportionate share of all dividends declared and paid on the stock of 'the company' held in trust as aforesaid (less his proportionate share of the expense incident to this trust.) In witness whereof the said trustees have hereunto set their hands this Apr. day of 26, A. D. 1921."

The trust agreement was printed on the back of this certificate. Since that time, the new company has issued no further certificates to Johnson, and up to the time of the levy and the trial, this stock still stood in the name of the trustees. The company kept a card index of its stockholders. When Johnson transferred his stock to the trustees, his stock certificate was canceled and his card as a stockholder was taken out of the so-called live file and put into a dead file, and a card for the trustees' stock was put in the live file in its stead. The trustees kept a book, Exhibit A, from which they issued trustees' certificates. One of them testifies that the company had nothing to do with that, except they were members of the company. On January 4, 1923, Johnson, in writing, nominated Ode, one of the trustees, his attorney or proxy for the stockholders' meeting to be held January 24, 1923, unless he should be personally present. Notice of such meeting had been given by the president of the company, December 30, 1922. On March 24, 1923, defendant Johnson sold his stock or trustees' certificate to intervener, Thompson, for $1,750 cash, and on the same day assigned the same in writing to intervener, Thompson, in the following words:

"Assignment.

"For good and valuable consideration, I hereby sell, transfer, set over and assign all my right, title and interest in and to this trustees' certificate to John Thompson, his executors, administrators, heirs and assigns; and I hereby authorize and direct the trustees hereof to recognize said assignee herein named as my successor and lawful assignee hereof and entitled to all my rights and interests in the premises."

There is no evidence that Thompson had knowledge, notice, or information of any claim against the trustees' certificate when he took the assignment from Johnson, and he alleges that he had no such knowledge or notice, and paid for it in good faith and for reasonable value and in the ordinary course of his business. After intervener, Thompson, purchased the trustees' certificate from Johnson, and on March 28, 1923, the sheriff was directed by attorney for the receiver, among other things, to garnish Thompson and Thompson & Company, and this was done; and to levy on Johnson's purported rights or interest in the new insurance company's stock. The notice of levy on the stock by the sheriff is directed to Great Republic Re-Insurance Fire Company (a corporation) and John H. Johnson, defendant. It recites:

"The stock of said John H. Johnson, in said Great Republic Re-Insurance Fire Co. (a corporation) has been and is hereby levied on (and attached) under and by virtue of said general execution and directing that the stock be dealt with hereafter in accordance with this notice. Dated March 28, 1923."

The return of the sheriff recites, among other things:

"By virtue of the laws of Iowa (see Section 2967 of the Code) I served said notice on within named Great Republic Re-Insurance Fire Co., on March 28, 1923, by reading the said notice to F. M. Marigold, secretary of said company," etc.

There was no corporation of that name at that time, and of course Johnson had no such stock in such a company upon which a levy could be made. It is one of the contentions of intervener, Thompson, that, because of this, the notice to the wrong company and the levy were invalid. He also contends that at that time Johnson had disposed of all his rights, both legal and equitable, in the stock.

Service of notice of the levy was made at the office of the new company in the presence of Becker, treasurer of the company, and one of the trustees, who testifies:

"My office is next to Mr. Marigold's, whose office is in the northeast corner of the building. When the sheriff came into Marigold's room, Marigold called to me to bring the records showing the stock certificate for this attachment. I brought in this stock certificate book, Exhibit A, in the room. The sheriff delivered the notice to us, and I pinned it to that stub [the trustees' certificate book stub]. Mr. Marigold and I were both present when the sheriff delivered the notice. The next day, or the day after, Thompson brought in the certificate of Johnson, to have it transferred on the books of the company. We did not transfer it."

Soon after this, intervener served upon the sheriff a notice of claim to the trustees' certificate, and thereafter filed his motion. On the same day, the receiver secured an order for the examination of Thompson as garnishee. Prior thereto, and on March 28th, when the notice of garnishment was served, Thompson answered interrogatories attached, that he was not indebted to the defendant, and had no property rights or credits of said defendant's in his possession or under his control.

It is contended by appellant that, at the time of the levy and garnishment, it had no notice of the sale and assignment of the stock on the 24th previously. On the other hand, appellee contends that it should be inferred that the receiver did have notice, or he would not have garnisheed Thompson as the supposed debtor of Johnson for the sale of the stock, and that this circumstance indicates that plaintiff had knowledge that negotiations of some sort had been entered into between Thompson and Johnson. No proceedings other than the foregoing were instituted by appellant.

It is contended by appellant that, under the levy as shown, appellant acquired a lien upon said stock or interest which is prior to any right or title on the part of intervener; that, notwithstanding the assignment by Johnson of his certificates to trustees and the surrender of these certificates to the corporation and the issuance to the trustees by the corporation of an-

other certificate, the stock was still subject to levy because it still belonged to Johnson; that the transfer by Johnson to the trustees did not constitute a sale or such a transfer as to bar the receiver from levying on it; and further, that the agreement between Johnson and the five trustees is a voting trust agreement, and invalid under Section 1821-x, Code Supplement, 1913, because it is, in effect, a proxy extending more than thirty days. On the other hand, it is contended by appellee, in addition to the matters before mentioned, that the purported levy was void because an equitable interest in corporate stock cannot be levied upon by a sheriff. Appellee denies that the trust agreement was a voting trust agreement or a violation of the statute, and contends that, even so, or in any event, the validity of the trust agreement between Johnson and his trustees cannot be questioned by a third person when the trustees are not parties or before the court; that appellant is estopped by the garnishment proceedings and by his ratification and election of remedies; that no notice to parties in possession was given, as required by Code Sections 3900, 3974, and 3894.

1. We are of opinion that appellee's point that the validity of the trust agreement between Johnson and his trustees cannot be questioned by a third person, is well taken, and that the interest of Johnson, if any, which appellant concedes to be only an equitable interest, cannot be reached in the manner attempted. It might be reached in equity, perhaps, if there was any interest left for Johnson, or owned by him, at the time of the levy. It is argued by appellant that Johnson still had an equitable interest in the stock, which may be sold on execution. But Johnson had no interest at the time of the levy. Even if he had, we shall see in a moment that the trustees are necessary parties. The legal title was and is in the trustees. There may be equities, rights, and liabilities, as between Johnson and the trustees. Appellant is seeking to divest the trustees of their legal title and to determine the validity of the trust agreement when the trustees are not in court. The cases are not in harmony on the question as to whether such an agreement is illegal. Some hold that, whether there is a statute on the subject or not, such an agreement is invalid because against public policy, and be-

cause it deprives the owner of the stock of the right and duty to vote it. Others hold that, in the absence of a statute, it is not invalid. In the latter class is *Venner v. Chicago City R. Co.*, 258 Ill. 523 (101 N. E. 949). In the first class is *Sheppard v. Rockingham Power Co.*, 150 N. C. 776 (64 S. E. 894). That case is cited in 14 Corpus Juris 664, note 15, to the proposition that the assignability of the shares is not affected by the fact that they are held under an illegal voting trust. The *Sheppard* case was an action to restrain the trustees from voting the stock. The plaintiff was not a party to the trust agreement, but was a purchaser of shares of the stock thus pooled. It was held that, even so, he was entitled to an injunction. Under the authority of that case, and we think in either view of the matter, Johnson had the right to make the assignment to Intervener Thompson.

In 6 Corpus Juris 212, it is said that, in states where statutes authorize shares of stock to be attached, only the legal, and not the equitable, interest is attachable. The trend of modern legislation is to the contrary as to other kinds of property, real or personal. 23 Corpus Juris 340. See *Wells & Co. v. Sabelowitz*, 68 Iowa 238, holding that the interest retained by the mortgagor of personal property may not be levied on and sold under execution or attachment against the mortgagor. Our statute, Sections 3894 and 3974, Code of 1897, permits a levy on shares of stock, and prescribes the method. Cases are also cited to the proposition that the notice of levy was directed against the wrong corporation, and that the levy was, therefore, invalid.

We have digressed a little. Going back to the proposition whether the trustees are necessary parties, we find this doctrine in 39 Cyc. 452: In an action at law for the protection of the legal ownership, or even in a court of equity, the trustee is generally an indispensable party. There are some exceptions to the rule, and some cases hold that it is a matter of discretion with the trial court, as where the trustee is a nonresident, or has disclaimed, resigned, or otherwise discharged himself of his trust. If, however, the trustee has not actually disclaimed, he is a necessary party, although he never accepted or acted in the trust. Some cases hold that, if the trustee resides out of the jurisdiction of the court, it is customary to proceed with the

action without his presence, and settle the rights of the parties before the court, leaving the successful party to proceed afterward, if necessary, against the trustee, to compel him to convey the legal title. 39 Cyc. 453 *et seq.*, and notes. Such is not the situation here. To proceed now, and later bring in the trustees, would require two actions when the whole matter could be determined in one. In *Tucker v. Silver*, 9 Iowa 261, it was held that, in an action by a *cestui que trust* to foreclose a deed of trust on personal property in his favor, the trustee should be made a party. See, also, *Bennett Sav. Bank v. Smith*, 171 Iowa 405, 408. In *Parkhill v. Doggett*, 135 Iowa 113, 115, it was held that, where a trust has been created for that portion of an estate devised to a minor to be so held until the minor attains his majority, a trustee who is vested with the title is a necessary party to a partition of the estate which in any manner affects the interest of the devisee during his minority. The court said:

"He was not made a party by the pleadings, nor was notice of any kind served upon him. The court was therefore wholly without jurisdiction to render a judgment in the partition proceedings affecting in any way the interests represented by the trustee."

That case was before us on two subsequent appeals, but on other points. The case is cited in *Curtis v. Reilly*, 188 Iowa 1217, 1220, where we said:

"The rule is settled beyond all controversy that an action for partition of lands between tenants in common will not be entertained by the courts unless all persons interested therein are impleaded as plaintiffs or defendants."

This proposition is not met by appellant. He cites no authorities, and makes very little, if any, argument on this point.

We are of opinion that the trial court was justified on this ground, if no other, in sustaining appellee's motion.

The ruling of the trial court was correct, and it is—*Affirmed.*

ARTHUR, C. J., and EVANS and FAVILLE, JJ., concur.