## MOREL *et al. v.* HOGE *et al.*

An agreement between two factions of the shareholders of a railroad company incorporated by the Secretary of State, to the effect that one of such ·factions, owning half of the corporate stock, shall have the right indefinitely to name a majority of the directors of the company, and thus manage and control its affairs, is against public policy and, therefore, void.

Argued March 16,—Decided May 13, 1908.

Mandamus. Before Judge Rawlings. Screven superior court. January 31, 1908.

The Sylvania & Girard Railroad Company, S. C. Hoge, L. H. Hilton, W. P. Williams, J. R. Wells, and J. A. Mills petitioned for a writ of mandamus against J. J. B. Morel, J. W. Overstreet, P. A. Mock, and certain named agents of the railroad company, to require defendants to deliver to petitioners the books, papers, money, and property of every description in their possession, custody, and control, belonging to such company. The substance of the petition was: At the regular annual meeting of the stockholders of the company, in January, 1908, at which all of the shares of stock were represented by their owners, the individual petitioners were duly elected directors of the company for the ensuing year, they having received the votes of stockholders owning 55 shares out of the 100 shares constituting the capital stock of the company. After the adjournment of the stockholders' meeting, such directors elected S. C. Hoge president and W. P. Williams secretary and treasurer, for the ensuing year. Hoge, as

president of the company, made written demand upon J. J. B. Morel, former president, and J. W. Overstreet and P. A. Mock, former directors of the company, and upon the agents of the company, named in the petition, for all books, papers, money, and property in their possession, custody, and control, belonging to the company, which demand was refused. Copies of the minutes of the stockholders' meeting and of the directors' meeting were attached to the petition, and were in accord with the allegations thereof. The petition was positively verified.

The answer to the rule to show cause was, in substance: The Sylvania & Girard Railroad Company was incorporated by the Secretary of State, on October 18, 1905. Prior to that time, at a meeting of certain citizens of Sylvania, to promote the incorporation of the company for the purpose of constructing the railroad, a strong sentiment to keep L. H. Hilton permanently out of the control of the projected company was developed. In a spirit of compromise, and "in order to show his good faith, and quiet any apprehension as to him," L. H. Hilton offered the following resolution, which was adopted: "Resolved, that Mr. H. C. Perkins be allowed to subscribe $2,500 to the capital stock of $10,000, and Mr. L. H. Hilton and his friends be permitted to subscribe $2,500 to said capital stock, and the remaining be subscribed by J. J. B. Morel, G. M. Overstreet, P. A. Mock, J. A. Enneis, H. C. White, and J. W. Overstreet, and such of their friends as they may select or designate. Resolved further, that three directors be selected from the last apportionment of $5,000, and two be selected from the first apportionment of $5,000, all of the subscribers to be residents of this community, except Mr. Perkins, who has business interests here." The minutes of this meeting, set out in the answer, showed that Hilton, Morel, Perkins, Mock, and J. W. Overstreet "were proposed as Board of Directors to be notified after the charter is obtained." At this meeting, and before the above resolution was passed, Morel "stated that he would not put five cents in any enterprise where there was any probability of the said Hilton ever, in any way, getting control." Hilton understood this, and offered and supported the resolution with such understanding. In the language of the answer, "After the charter was obtained, these minutes were read and ratified at the meeting of the incorporators, and directors were

elected.   J. J. B. Morel, P. A. Mock, and J. W. Overstreet were
the three directors representing Mr. Morel and his friends.   The
stock was subsequently apportioned as follows:   J. J. B. Morel,
14 shares; P. A. Mock, 12 shares; H. S. White, 7 shares; G. M.
Overstreet, 7 shares; J. A. Enneis, 5 shares; J. W. Overstreet, 5
shares; H. C. Perkins, 25 shares; L. H. Hilton, 17 shares; G. M.
Hill, 3 shares; E. H. Hill Jr., 2 shares; W. P. Williams, 2 shares;
R. W. Wells, 1 share.   The first six mentioned constitute what
may be called the Morel interest.   It was agreed among these six
that they would not sell outside of their friends, and J. A. Enneis
was a party to this agreement.   It was thoroughly understood by
the incorporators that the control of Morel and his friends was to
be permanent; and but for this, the charter would not have been
obtained or accepted."   At this meeting, when the stock was ap-
portioned, Hilton, the two Hills, Williams, and Wells were pres-
ent, and agreed to the resolution and understanding "as to the
control of said railroad company, and took their stock subject to
the resolution and with a full understanding that they would in
the future be bound by the terms of said resolution and agree-
ment."   As to the representation and ownership of the 55 shares
of stock voted for petitioners for directors, at the stockhold-
ers' meeting held in January, 1908, the defendants allege that
"L. H. Hilton was present owning 17 shares; J. H. Hall was
present owning 3 shares, claiming that these 3 shares had been
transferred to him by G. M. Hill, but these 3 shares really be-
longed to the said Hilton and were controlled entirely by him, he
having paid for them, and the said 3 shares being really his prop-
erty; E. H. Hill was present, claiming to own 2 shares, but these
2 shares also belonged to the said Hilton; W. P. Williams was
present, claiming to own 2 shares, but these 2 shares really be-
longed to the said Hilton; J. R. Wells was present, claiming to
own one share, although this share belonged to the said Hilton;
J. A. Mills·was ·present, claiming to own 5 shares, but these de-
fendants believe and charge that these 5 shares really belonged to
the said Hilton and were controlled by him; S. C. Hoge was pres-
ent, claiming to own 25 shares, and these defendants believe and
charge that these 25 shares were really owned and controlled by
the said Hilton."   At this meeting the defendants insisted that
three of the directors should be elected from the Morel faction, so

as to give it a controlling interest in the management of the affairs of the company, as was contemplated by the agreement under which the company was organized and chartered. But Hilton and his friends refused to carry out such agreement, and, over the protest of Morel and his friends, elected a board of directors in violation thereof. "Defendants believe and charge that the said Hoge was thoroughly aware of this agreement and understanding when the 25 shares were put in his name. In any event, if the said Hilton had carried out the agreement, then a Board of Directors would have been elected, three of whom would have represented the anti-Hilton interest or faction." The answer also alleged, "that at a meeting held by the said Morel and his friends, a board of five directors was elected, composed of the said Morel, J. W. Overstreet, P. A. Mock, L. H. Hilton, and S. C. Hoge. Defendants say that this was the same meeting at which were elected the directors voted for by Hilton, Hoge, et al. The Hilton meeting had been declared adjourned by the Hilton party, but there was no adjournment of the meeting, and these defendants (not recognizing any adjournment) cast 45 shares for the Morel board and against the Hilton board, and did this at the meeting and before leaving the meeting, all the stock being present." The answer was positively verified. A hearing was had before the judge in vacation, on the petition and answer alone, and a mandamus absolute was granted; to which judgment defendants excepted.

*E. K. Overstreet* and *Adams & Adams,* for plaintiffs in error.

*J. H. Hall, Warren Roberts,* and *M. F. Hatcher,* contra.

FISH, C. J. (After stating the facts as above.)

The contention of the Morel faction is, that an agreement was entered into between it and the Hilton faction, which agreement was a condition precedent to the incorporation of the Sylvania & Girard Railroad Company, to the effect that, in consideration of the Morel faction subscribing for 50 of the total number of 100 shares of the capital stock of the company, the Morel faction should permanently have the right of selecting and having elected three of the five directors of the company, "and thus exercise a control over the company and its affairs." Granting that the allegations of the answer are sufficient to sustain this contention, the question for adjudication is whether such agreement is valid. The

company was incorporated by the Secretary of State, under the provisions of the Civil Code, §2159 et seq. In §2163 it is provided: "The board of directors shall select from their number a president, and may elect one or more vice-presidents, and may appoint a secretary, a treasurer, and such other officers and agents as they may deem necessary." Therefore, if the Morel faction has the right, by virtue of the agreement, to have elected a majority of the directors of the company, favorable to the interests of that faction and willing to carry out its policies in the management of the corporate affairs, and the members of the Hilton faction are bound by the agreement to so vote their stock as to enable the Morel faction to exercise such right, then the last-named faction may indefinitely control the entire management of the company, and accordingly name all its officers and agents, fix their compensation, and choose any of them from among the shareholders identified with such faction, even though it may own, as is now the case, only a minority of the corporate shares. In Shepaug Voting Trust Cases, 60 Conn. 579 (24 Atl. 41), Robinson, J., said: . . "the duty which each stockholder owes his fellow stockholder [is] to use such power and means as the law and his ownership of stock give him, that the general interest of the stockholders shall be protected and the general welfare of the corporation sustained, and its business conducted by its agents, managers, and officers, so far as may be, upon prudent and honest business principles, and with just as little temptation to and opportunity for fraud, and the seeking of individual gains at the sacrifice of the general welfare, as possible. . . He may shirk it perhaps by refusing to attend stockholders' meetings, or by declining to vote when called upon, but the law will not allow him to strip himself of the power to perform his duty."

In Cone v. Russell & Mason, 48 N. J. Eq. 208 (21 Atl. 847), the owners of a majority of the shares of a transportation corporation mutually agreed to execute, and did execute, a proxy purporting to be irrevocable for five years, authorizing the persons therein named to vote at all stockholders' meetings; and they on their part agreed to so vote that one of the parties to the agreement should be continuously employed as a manager of the corporation, at a salary specified in the agreement. This agreement was held to be against public policy and, therefore, void, upon the ground

that it was the obligation of corporators and shareholders to attend in person and execute the trust or franchise imposed upon them, and that the good of the public required that each stockholder should exercise his individual judgment as to all matters presented.   In the opinion delivered for the court, Pitney, V. C., quoted the language of Chief Justice Shaw, in Fuller *v.* Dame, 18 Pick. 484, as follows:   "Mr. Fuller was one of the original proprietors of the Worcester Railroad.   His associates had a right to believe that, in all his acts as such stockholder, in choosing directors, in framing by-laws, and in doing other acts, pursuant to the powers of the corporation, he had a common, and, in proportion to his shares, an equal interest, and they had a right to rely on his judgment, his recommendations of directors, and other acts, with all the confidence inspired by such a belief."   There are a number of other cases in which it has been held that agreements between stockholders, that particular persons shall fill the offices of a corporation and draw designated salaries, impair the duty of stockholders to choose for their officers such persons as are best adapted to promote the welfare of the corporation.   Among them are Guernsey *v.* Cook, 117 Mass. 548, s. c. 120 Mass. 501; Woodworth *v.* Wentworth, 133 Mass. 309.   In White *v.* Thomas etc. Co., 52 N. J. Eq. 178 (28 Atl. 75), the holder of certain patents agreed with several capitalists to form a joint stock company, a portion of the capital stock of which was to be issued to him in payment of patents to be assigned to the corporation, another portion to be issued to the capitalists for funds to be advanced by them in exploiting the patents, and the remaining shares were to be held in the treasury for sale.   It was agreed that the shares other than those left in the treasury were to be transferred to a trustee, to be held for the term of ten years, and were by him to be so voted at the elections of the directors that the patentee should nominate and elect a minority of the directors, and the holders of the remainder of the stock should elect the majority.   After the shares reserved in the treasury were sold and the purchasers thereof had also purchased of the patentee the greater portion of his stock, a suit was brought by such purchasers against the trustee, to restrain him from voting at an approaching election the shares of stock thus held by him in trust, and to have the agreements under which he held them cancelled and set aside.   The court, re-

lying upon the general principle that the right to vote stock "can not be separated from the ownership in such sense that the elective franchise shall be in one man, and the entire beneficial interest in another, nor to any extent, unless the circumstances take the case out of the general rule," declared the trust in question void, and granted the relief sought by the complainants. In Harvey v. Improvement Co., 118 N. C. 693 (24 S. E. 489, 32 L. R. A. 265, 54 Am. St. R. 749), it was declared, that "each stockholder, whether by himself or his proxy, must be free to cast his vote for what he deems the best interest of the corporation, the other stockholders being entitled to the benefit of such free exercise of his judgment by each; and hence any combination or device by which a number of stockholders shall combine to place the voting of their shares in the irrevocable power of another is held contrary to public policy," and "power to vote is inherently annexed to, and inseparable from, the real ownership of each share, and can only be delegated by proxy with power of revocation." So in Gage v. Fisher, 5 N. Dak. 297 (65 N. W. 809, 31 L. R. A. 557), one of the grounds upon which the transaction therein involved was held to be void was that each stockholder in a corporation has the right to demand that every other stockholder, if he desires to do so, shall have the right to exercise at each annual meeting "his own judgment as to the best interest of all the stockholders, untrammeled by dictation and unfettered by the obligation of any contract." We are aware that there are some cases in which a contrary principle is announced, but, in our opinion, the cases cited announce the better doctrine. One of the cases holding contrary to our opinion is Smith v. San Francisco & N. P. R. Co., 115 Cal. 584 (47 Pac. 582, 35 L. R. A. 309, 56 Am. St. R. 119), the soundness of which, we think, is very justly criticised in a note following a report of the case in 56 American State Reports, 119. In that case it may be noted that the contract involved was limited to five years.

In the instant case the motives of Morel and those acting with him may be for the promotion of the prosperity of the corporation and the welfare of the majority of its stockholders, but, in passing judicially upon the question as to the validity of the contract set up by them, and under the terms of which they claim the right to indefinitely control the affairs of the corporation, we

must look alone to what such contract permits to be done, if the parties, or any of them, choose to press the privileges which it confers. According to the authorities we have cited, it is the theory of the law that the holders of the majority of the shares of stock in a corporation may control its management, and every person who becomes an owner of stock therein has a right to believe that the corporation will, and to insist that it shall, be managed by the majority. Morel and his friends owned only 50 shares of stock, just half of the whole number of shares, at the time the agreement in question was entered into; now they own only 45 shares, one of their number, contrary to an agreement entered into by them among themselves, having sold his five shares; and it is this minority which claims to have the right to control the corporate affairs by dictating the majority of the directors to be elected. To illustrate how small a minority might exercise such right under the alleged agreement, suppose none of the other members of the Morel faction should sell, and they should agree among themselves to vote their stock as a unit, as determined by ballot, then 23 shares would control. If this could be done, then the owners of such 23 shares could agree among themselves that they would hold meetings, and by a majority of their shares determine how all the 23 votes should be cast in the meeting to be held to determine how the 45 shares should be voted; and if so, then 12 shares could determine the whole policy of the corporation, though the Hilton faction should own 25 shares, Hoge 25 shares, and Mills 5 shares, as seems now to be the case, as the answer charges merely on belief that Hilton is the real owner of the shares standing in the names of Hoge and Mills.

Our conclusion is that the contract set up by the respondents to the rule, as cause why mandamus absolute should not be granted, is against public policy and, therefore, void, because it indefinitely deprives the owners of the stock constituting the Hilton faction, though they may have a majority of the stock, of the power to exercise their right as well as their duty to the other stockholders, present or future, and to the public, to so vote in the election of directors for the company as will in their judgment promote its prosperity and best enable it to perform its duties to the public, and because it gives the shareholders of the Morel faction, even though they may own but a small minority of the stock, the right

to indefinitely control the affairs of the corporation, including the right to fix the compensation of its officers and agents and to fill any of such positions from among their own members. It follows that the court did not err in rendering the judgment of which complaint is made. *Judgment affirmed. All the Justices concur.*