## CONSOLIDATED TEXTILE CORPORATION v. DICKEY et al.

(Circuit Court of Appeals, Fifth Circuit. January 18, 1921.)

No. 3586.

1. **Courts ☞405 (5)—Case involving question additional to jurisdiction as federal court is reviewable by Circuit Court of Appeals.**

   Though, under Judicial Code, § 238 (Comp. St. § 1215), an appeal from the District Court lies only to the Supreme Court, if the jurisdiction of the District Court as a federal court is the sole question involved, an appeal may be taken to the Circuit Court of Appeals, even if the question of jurisdiction is presented, where another question also arises.

2. **Courts ☞405 (5)—Whether nonresident is indispensable party is reviewable by Circuit Court of Appeals.**

   Whether a nonresident of the district in which suit was brought is an indispensable party to the suit is a question of general jurisdiction, applicable alike to state and federal courts, and is reviewable by the Circuit Court of Appeals.

3. **Courts ☞273—Nonresident of district cannot be made party to suit to cancel voting trust agreement.**

   A suit by a corporate stockholder to cancel a voting trust agreement, entered into by the majority stockholders as a violation of his rights, is not in the nature of a suit to remove cloud on title to stock, and is therefore not one in which a nonresident of the district can be made a party under Judicial Code, § 57 (Comp. St. § 1039).

4. **Courts ☞273—Jurisdiction retained, if absent party is not indispensable to any relief.**

   If there is any part of the relief sought as to which a nonresident of the district is not an indispensable party, the bill will be retained for that purpose.

5. **Equity ☞94—Nonresident trustee held not "indispensable party" to suit to dissolve voting trust.**

   Where a voting trust agreement between the majority stockholders of a corporation authorized the majority of the trustees to vote the stock held in trust as they decided, or to dissolve the trust agreement at any time, a trustee who was a nonresident of the district is not an indispensable party to a suit to cancel the trust agreement for illegality, since the majority of the trustees who were parties could exercise every power of the agreement without his consent, and an indispensable party is one who has such an interest in the controversy that a final decree cannot be made without either affecting that interest or leaving the controversy in such condition that its final determination may be inconsistent with equity.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Indispensable Party.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

Appeal from the District Court of the United States for the Northern District of Georgia; Samuel H. Sibley, Judge.

Suit by the Consolidated Textile Corporation against James L. Dickey and others. From a decree dismissing the bill for want of necessary parties (266 Fed. 587), complainant appeals. Motion to dismiss the appeal denied, decree reversed, and cause remanded.

Clifford L. Anderson, Daniel MacDougald, E. R. Black, Sanders McDaniel, and Daniel Rountree, all of Atlanta, Ga., for appellant.

R. R. Arnold, Morris Brandon, and John A. Hynds, all of Atlanta, Ga., for appellees.

Before WALKER, BRYAN, and KING, Circuit Judges.

BRYAN, Circuit Judge. Appellant, a Delaware corporation, exhibited its bill against James L. Dickey, James S. Floyd, Edward C. Peters, Morris Brandon, James S. Akers, and Henry Durand, all residents within the Northern district and citizens of Georgia, and against Floyd W. Jefferson, a citizen of New Jersey.

The bill avers: That the Exposition Cotton Mills is a Georgia corporation, having an outstanding capital stock of $700,000, consisting of 7,000 shares, of the par value of $100 each; that appellant is a stockholder in said corporation, owning 499 shares, and interested in 2,590 additional shares, under options and contracts of purchase; that appellees are also large stockholders, and are seven of the nine members constituting the board of directors of said corporation; that on April 2, 1920, appellees, and other stockholders, together owning slightly more than a majority of the outstanding shares of the said Exposition Cotton Mills, entered into a voting trust agreement, which in substance provided: That said stockholders should transfer their shares of stock to the First Trust & Savings Corporation, also a Georgia corporation, as trustee of the legal title; that said trustee should execute and deliver to the stockholders trust certificates representing their shares of stock; that appellees should be constituted the irrevocable proxies of said stockholders to vote all stock so delivered to the trustee; that the trustee should sell all said stock, if directed in writing to do so by the holders of four-fifths in amount of the certificates; that the trustee should receive all dividends on said stock, and pay same out to the holders of certificates in proportion to the amount of stock represented thereby; that any vacancy caused by the death, resignation, or disqualification of any voting trustee should be filled by the remaining trustees; that during the life of the trust agreement the said stockholders would not sell their shares of stock, although they were at liberty to sell their voting certificates, in which event the voting trustees would represent the assignees of the certificates; that the voting trustees should vote as a majority thereof might direct; that Jefferson should vote with the majority of the voting trustees; that the trust agreement could be terminated at any time by six of the voting trustees; that the trust agreement should terminate December 31, 1922, unless a majority in amount of the holders of certificates should agree in writing to continue it, in which event it should terminate December

31, 1927; that upon the termination of the trust agreement, stock should be reissued in lieu of trust certificates. It was then averred that the voting trust agreement had been entered into for the purpose of making appellee Jefferson sales agent to handle the output of the Exposition Cotton Mills. The bill prayed, among other things, that the voting trust agreement be declared void and surrendered for cancellation, that appellees be enjoined from exercising any powers thereunder, and further that they be enjoined from making any sales contract with Jefferson.

Subpœnas were served upon the appellees, other than Jefferson, and he was required to appear by the terms of an order issued under the provisions of section 57 of the Judicial Code (Comp. St. § 1039). Jefferson moved to quash the service made upon him and to dismiss the bill, upon the grounds that said section 57 is inapplicable to the case stated, and that the court had not acquired jurisdiction over his person. The other appellees also filed a motion to dismiss upon similar grounds, and upon the further ground that the suit could not proceed against them, because Jefferson was an indispensable party. There was an additional reason assigned in the latter motion to dismiss, to the effect that the Exposition Cotton Mills and the First Trust & Savings Corporation were also indispensable parties. The District Court granted these motions for the reasons assigned, except as to the Exposition Cotton Mills and First Trust & Savings Corporation, and declined to permit an amendment making them parties, only because that would be a futile thing to do, inasmuch as, in the view of the court, the bill would have to be dismissed at all events because Jefferson could not be made a party. Appellees move to dismiss this appeal for lack of jurisdiction in this court, and insist, because the trial court dismissed the bill solely for want of jurisdiction, that the appeal lies exclusively to the Supreme Court of the United States.

[1, 2] If the jurisdiction of the District Court as a federal court were the sole question involved, an appeal would lie only to the Supreme Court under the very terms of section 238 of the Judicial Code (Comp. St. § 1215). However, where another question than that of jurisdiction arises, although the question of jurisdiction is also presented, an appeal is properly taken to the Circuit Court of Appeals. Whether Jefferson is an indispensable party is a question of general jurisdiction, applicable alike to state and federal courts, and is reviewable by this court. Bogart v. Southern Pacific Co., 228 U. S. 137, 33 Sup. Ct. 497, 57 L. Ed. 768; Geneva Furniture Manufacturing Co. v. Karpen, 238 U. S. 254, 35 Sup. Ct. 788, 59 L. Ed. 1295; Boston & Maine R. R. v. Gokey, 210 U. S. 155, 28 Sup. Ct. 657, 52 L. Ed. 1002. The motions to dismiss the appeal are therefore denied.

By the assignments of error it is insisted (1) that the case is of such a nature that Jefferson can be made a party defendant, though he resides in another state, under the provisions of section 57 of the Judicial Code; and (2) that Jefferson is not an indispensable party, and that the court could therefore grant the relief prayed, or at least a part of it, as against the other appellees.

[3] 1. We are of opinion that the court correctly held that the

averments of the bill did not bring the suit within the provisions of section 57 of the Judicial Code. Appellant's proposition is that the acts complained of constitute a cloud upon the title to its shares of stock. No one is disputing appellant's title, or asserting any claim to it. The real complaint is, not that appellees are asserting any claim against or right to appellant's stock, but that they are using their own stock in a manner which is alleged to be illegal, to the damage and injury of appellant.

[4] 2. As to the dismissal of the bill because of the inability to join Jefferson as a party defendant, if there is any part of the relief sought as to which he is not an indispensable party, the bill will be retained for that purpose. Waterman v. Canal-Louisiana Bank Co., 215 U. S. 33, 45, 30 Sup. Ct. 10, 54 L. Ed. 80. In this case appellant seeks as a part of the relief an injunction to prevent the voting of the stock standing in the name of the First Trust & Savings Corporation by a majority of the voting trustees, in whom such right to vote is given by a proxy executed by such trust company to certain trustees, to be exercised by a majority.

The case of appellant is based on the theory that under the public policy of the state of Georgia, as claimed to be stated in the case of Morel v. Hoge, 130 Ga. 625, 61 S. E. 487, 16 L. R. A. (N. S.) 1126, 14 Ann. Cas. 935, the voting trust agreement set out as an exhibit to the bill, under which the several stockholders divest themselves of the voting power of their stock while retaining the beneficial interest, and vest it by a pooling agreement in a majority of voting trustees, is a violation of the duty which the several shareholders owe to each other under the charter of the Exposition Cotton Mills, and that appellant as a shareholder has the right to an injunction to prevent the voting of such shares by such majority, or by the First Trust & Savings Corporation as the holder of the naked legal title under such an agreement. All of said trustees save one (Jefferson) being within the jurisdiction of the court, and the creator of the proxy, the First Trust & Savings Corporation, being within the jurisdiction, if the vesting of said title by the several stockholders in said trust company, and through it in said majority of said voting trustees, is contrary to the public policy of Georgia and illegal, and if appellant is entitled, on a bill to which all indispensable parties are made and served, to an injunction, we do not think that the nonresidence of one of the trustees, whose presence would not oust the jurisdiction of the court, should prevent the court from entertaining the bill for such injunction.

[5] It is evident that the injunction prayed for against the appellees, other than Jefferson, would not deprive him of any right which he can exercise under said voting trust agreement. He has no right to exercise the proxy thereby created; but such right is vested in the majority, who are parties to the bill. In Shields v. Barrow, 17 How. 130, 15 L. Ed. 158, indispensable parties are defined to be:

"Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience."

There cannot be much difficulty in applying this accepted rule of law to the facts pleaded in appellant's bill of complaint. Here the citizenship of appellant is diverse from that of any and all the appellees. If Jefferson were a party, the jurisdiction of the court would not be ousted. Suit could not be brought in New Jersey, of which state Jefferson is a citizen, without encountering the same, if not a greater, difficulty as to parties. If the suit cannot be maintained in Georgia, it cannot be in any state or federal court. The result would be that appellant would have no tribunal to which it might submit the question of whether the acts complained of are violative of the public policy of the state of Georgia as charged. The voting trust agreement is with the voting trustees as a body, and not as individuals. The six voting trustees of which the court has jurisdiction have the power and the right to terminate the trust agreement at any time. Jefferson has no individual interest to be affected, and cannot exercise any power by himself. The majority can exercise every power granted thereby over Jefferson's objections. If the appellees who are citizens of Georgia should determine to terminate the trust agreement, they would not be depriving Jefferson of any legal right.

The case is not before us upon its merits, and they have not been considered; but in our opinion appellant is entitled to a decision upon the merits, by the District Court, on the portions of the relief sought, above indicated.

The decree dismissing the bill is therefore reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.