## 10528.  ENGLISH *et al. v.* ROSENKRANTZ.

The stock-voting agreement between the plaintiff and other holders of a majority of the stock in a private corporation, under which she was authorized, in the event of the death of her husband, to vote all the stock for herself in the election of a vice-president of the corporation, was not contrary to public policy and was based upon a sufficient consideration; her rights under the contract were not lost by her divorce or re-marriage or the death of her former husband; and where, in violation of the agreement, the other parties voted their stock for a resolution

authorizing the board of directors to elect the officers, and ignored her attempts to vote all the stock for her own election to the office of vice-president—a salaried office—and the board of directors elected another to that office, she had a right of action for damages for the breach of the contract.

The court did not err in any of its rulings on the pleadings.

DECIDED JANUARY 28, 1921.

(Certiorari was granted by the Supreme Court.)

Action on contract; from Fulton superior court — Judge Pendleton. February 11, 1919.

*Brewster, Howell & Heyman, Mark Bolding,* for plaintiff.

*V. A. Batchelor, King & Spalding, John A. Sibley,* contra.

BLOODWORTH, J. Mrs. Rebie Rosenkrantz on April 16, 1918, filed a suit for damages against James W. English, Harry L. English, individually and as administrator of James W. English Jr., John K. Ottley, and others, for an alleged breach of contract. Her petition contains substantially the following allegations: In the year 1885 her father, W. B. Lowe Sr., with others, organized the Chattahoochee Brick Company, a corporation engaged in general contract work and the manufacture and sale of brick. Its capital stock was 2000 shares, $200,000. At the time of his death in 1900 the stock was held as follows: The Lowe estate 807 shares; James W. English Sr. 813 shares; A. B. Steele 380 shares. Her father's estate was controlled by the three executors of his will, namely his widow, Rebecca D. Lowe, his son, W. B. Lowe Jr., and the petitioner. The petitioner had intermarried with James W. English Jr., a son of James W. English Sr., in 1896. She and her co-workers differed as to the voting of the stock. The other two were opposed to the management of the company by the Englishes and were unwilling to re-elect James W. English Sr. as its president. She offered to vote one third of the said estate stock for him, but was advised that she could not, and that the other executors, being a majority, could vote the stock. The estate stock with Steele's stock was a clear majority. Steele encouraged Mrs. Lowe to stand for the office of president, and she was favorably considering it. In this connection the petitioner's former husband, James W. English Jr., had an interview with Steele and made a contract, in the name of James W. English Sr., to purchase the Steele stock. On information the petitioner

states that the agreement between James W. English Sr. and James W. English Jr. was that the purchase should be in the senior's name, but that she should receive one third of the said 380 shares, James W. English Jr. one third, and James W. English Sr. one third. Her attitude had estranged her from her own family, and her relations with her husband's family were then close and friendly. After the purchase James W. English Sr. refused to recognize the agreement mentioned above and insisted on having for himself 220 shares of the stock that had been ·acquired from Steele. This would give him a majority of this stock in his own name. Of the remaining 160 shares the petitioner was allotted 80 and James W. English Jr. 80. James W. English Jr., for himself and for his wife, the petitioner, protested against this arrangement, which violated the agreement as to the division of the Steele stock and which gave James W. English Sr. a majority of the stock in his own name. The consent of the petitioner and of James W. English Jr. was finally obtained, by the agreement to enter into the contract attached to the petition, which fixed the rights of the parties and sought to protect them against the power of the majority of the stock which thus went to James W. English Sr.

The contract, "Exhibit A" of the petition, was entered into and agreed to by the persons owning all the stock of the Chattahoochee Brick Company except that held by the executors of W. B. Lowe, deceased. The petitioner then had an undivided one-third interest in the shares. James W. English Sr., for reasons of his own, caused seven shares of his total of 1,033 shares to be apportioned, one share each, among the members of his family, and one share to John K. Ottley, his associate in the banking business. Of the signers of the said agreement all except John K. Ottley were of the immediate family of James W. English Sr. The agreement recited that it was made because unity of action was necessary to promote the interest of all stockholders and of the corporation and to continue the existing wise, conservative, honest, and economical management of its affairs, and to protect it from the manipulations of speculators and wreckers. The contract was executed on July 11, 1900, and it was agreed that until June 22, 1945, the stock now held, or any stock thereafter bought or acquired by any of the parties thereto should be

voted at all corporate meetings as a unit, and to that end the owners of the said stock constitute and irrevocably appointed James W. English Sr. and his successors, as provided in the agreement, their lawful agent and attorney to vote the said shares of stock at all corporate meetings, subject to the conditions and limitations expressed in the agreement. If James W. English Sr. died, or became unable to discharge the duties imposed upon him, such agency was to devolve upon his heirs, together with the petitioner, and they were jointly authorized to represent the said shareholders and vote the stock as fully as James W. English Sr. might. In the event of disagreement between the petitioners and the heirs at law of James W. English Sr. as to any vote, the disagreement was to be settled by an arbitration, as provided in the agreement. The limitations and conditions expressed were as follows: During his life James W. English Sr. could designate the president of the company and cast the vote for him. In the event of his death the stock should be voted for James W. English Jr., and should he die, then for Harry L. English. During the lifetime of James W. English Sr., James W. English Jr. should be elected vice-president, but should he die, the stock was to be voted for the petitioner. If James W. English Jr. became the president as above, Harry L. English was to be elected vice-president, but if each died, the shares of stock should be voted, in the election of a president, for such stockholder of the corporation as might be designated by the heirs at law of James W. English Sr. A provision was made for arbitration between the heirs at law of James W. English Sr. in case of disagreement among them. In the event of the death of James W. English Jr. the authority conferred upon James W. English Sr. and his successors, to vote the stock for a vice-president, was to be vested in the petitioner alone, and should she so desire she was authorized to vote the entire stock (both that owned or held and that which might thereafter be owned or acquired by any of the signers) annually for such stockholder of the company as she might designate for the office of vice-president, and she was expressly authorized to cast such vote for herself, it being contracted and admitted that she was, in the opinion of each of the parties, in all respects well qualified and fully competent to discharge the duties of such office. It was further contracted that in the event of her death the stock

owned or held by her might on demand be delivered to her heirs at law, provided that they should be persons other than James W. English Jr. or descendants of James W. English Jr. and the petitioner, and that in the event that the heirs should be other than the said James W. English Jr. or such descendants, all relations of the petitioners and her heirs at law with the other parties to this agreement should cease and determine, and her stock and any stock to which she would have been entitled should be withdrawn from the operation of this agreement and delivered to the representatives of her estate. Provision was then made for the election of certain persons annually as directors of the corporation, if then in life and competent to discharge the duties of the office. It was provided that the stock should be voted so as to authorize the payment to the president and the vice-president of a salary of $250 each, to be paid monthly out of the net earnings of the company after the payment of bills, with an express provision that the salaries should not be otherwise paid and money should not be borrowed for the purpose of paying them, and that the salaries should not be increased during the continuance of the contract, nor any new salaried office created without the unanimous consent in writing of all the parties to the contract, and then only when the interest of the corporation should seem so to require. Provisions were then made regarding the sale of the stock and the holding of it subject to the terms of the agreement, and for its deposit with James W. English as trustee; also certain provisions as to the manner in which the agreement might be amended, and for settling any dispute among the parties. By the terms of the contract declared on, all stock subsequently purchased or acquired by any of the parties should at once and without more become subject to the agreement. After the execution of the contract and long before its breach the petitioner became the owner of all the outstanding stock not originally assenting to the agreement; so that every share of the stock had in fact assented to it.

James W. English Jr. died in June, 1914. Prior to his death the petitioner had been granted a total divorce from him and had intermarried with her present husband, Baron Marcus Rosenkrantz. She alleged that upon the death of James W. English Jr. she became entitled, under the agreement, to vote the stock covered by the said contract, for the vice-president, and could vote

it for herself unless she chose to designate some one else. The petition showed that James W. English Sr., during the entire time up to the death of James W. English Jr., continued to exercise the powers under the said contract and to carry it out; that as late as November 16, 1912, which was after her divorce from the said James W. English Jr. and her marriage with her present husband, he wrote to her a letter referring to the said contract and stating: " I signed it and expect to live by it as I do by all contracts I make. " The petition showed that at a stockholders' meeting held July 2, 1914, the petitioner, who had become the sole executrix of the estate of William B. Lowe Sr., in which name the said 807 shares of stock of his estate, acquired by her in fee simple as aforesaid, still stood, was represented by her husband, Baron Marcus Rosenkrantz, as proxy. At that meeting a resolution was offered, providing that the officers of the company should be named and thereafter be elected by the board of directors, and their compensation be fixed by the said board. The petitioner's husband offered as an amendment a resolution, which was seconded by Mr. Bidwell, representing one share of stock, that the agreement made on July 11, 1900, between the parties above named, be filed with the board, and that they should vote in accordance therewith for the officers named therein. This amendment was defeated by the vote of all shares except those voted by Baron Rosenkrantz, and the original resolution, without amendment, was carried by the same vote. Afterwards the petitioner attended the annual meeting of stockholders of the said corporation held on January 24, 1916, at which she proposed, under the terms of the said contract, to cast the vote therein mentioned for herself as vice-president, together with the shares of stock known as the the W. B. Lowe estate, and she announced, by a written statement, that she did thus cast the said shares for herself, the same constituting the entire capital stock of the company. At a meeting of the board of directors held immediately after the stockholders meeting that body ignored the action of the petitioner and elected James W. English as president and his son Harry L. English as vice-president, all directors voting for the said Harry L. English as vice-president except the petitioner, she stating that she claimed to have elected herself vice-president of the company at the stockholders' meeting, and hence voted " No. "

Harry L. English was declared elected vice-president. The petition alleges that this action was in violation of the petitioner's rights under the contract; that she has been deprived of the salary of $250 a month, or $3,000 a year, attached to the said office, which salary has been paid since the inception of the agreement in July, 1900, to the persons recognized as vice-president, that the defendants have expressly repudiated the contract and denied that it has any force or effect, and that she is therefore entitled to sue for damages for the breach of said entire contract for the full term thereof; that the said contract vests in her the right to receive the salary of $3,000 per year until and through the year 1945; and she asks damages in the sum of $100,000.

The defendants demurred generally and specially to the petition. The plaintiff amended in certain particulars to meet the objections raised by special demurrer. The court, after amendment, overruled all the grounds of the special demurrer except the ground set out in paragraph 10 of the demurrer, which was sustained. (This ruling as to paragraph 10 of the demurrer is assigned as error, in the cross-bill of exceptions.) The defendants renewed their general demurrer to the petition as amended, raising the points: (*a*) that the petition shows no cause of action and no right of recovery; (*b*) that the contract, "Exhibit A," was illegal and void and contrary to public policy; (*c*) that there was no consideration for the contract, and it was nudum pactum; (*d*) that the petitioner, having remarried, was not entitled to the office, benefits, or emoluments of the contract, even if it was originally valid. The court overruled the general demurrer, on all the grounds stated, and the defendants excepted.

The court did not err in any of its rulings on the pleadings. The petition set out a cause of action. The Chattahoochee Brick Company, referred to in the contract declaration, is a private business corporation which has no functions of a public character; the contract is based upon a sufficient consideration, is not void as being contrary to public policy, and is a valid contract binding upon the parties thereto, and the petitioner did not lose any of her rights under the contract by reason of her divorce and subsequent remarriage, nor by the death of her first husband, James W. English Jr.

The judgments on both bills of exceptions are

*Affirmed. Broyles, C. J., concurs.*

LUKE, J., dissenting. I can not concur with the conclusion reached by the majority of the court. See *Morel* v. *Hoge,* 130 *Ga.* 625 (61 S. E. 487, 16 L. R. A. (N. S.) 1136; 14 Ann. Cas. 935).